IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **CELLSPIN SOFT, INC.,** | |
| **Plaintiff,** | Case No. 2:24-cv-263 |
| **v.** | **ORIGINAL COMPLAINT** |
| **SENSEONICS HOLDINGS, INC.,** **ASCENSIA DIABETES CARE** **HOLDINGS AG,** | |
| **Defendant**. | **DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.  This is a patent infringement action to recover no less than a reasonable royalty for Defendant's infringement of United States Patent Numbers as explained herein in Counts I through III as follows.

> Count I - 9,900,766
>
> Count II - 8,904,030
>
> Count III - 11,234,121 (collectively, the "patents-in-suit").

2.  The patents-in-suit do not expire until December 11, 2028.

## THE PARTIES

3.  The Plaintiff in this litigation is Cellspin Soft, Inc. ("Cellspin"), a Silicon Valley Start-up that acquired patents but due to willful encroachment of its intellectual property had to layoff its workforce.

4.  On information and belief, Senseonics Holdings, Inc. is a company reorganized and existing under the laws of the State of Delaware, and has shown below, with a place of business in this District in Tyler, McKinney and Plano, Texas. Upon information and belief, Defendant principal executive offices are

located at 20451 Seneca Meadows Parkway, Germantown, Maryland 20876-7005.

5.    On information and belief, Defendant Ascensia Diabetes Care Holdings AG, runs the global exclusive distribution of the Senseonics' Eversense E3 CGM systems.  *See* Exhibit 4 at 11; *see also* February 6, 2024 Press Release last visited on April 19, 2024, at https://www.senseonics.com/investor-relations/news-releases/2024/02-06-2024-130055328.

6.  Collectively, Defendant Senseonics Holdings, Inc. and Defendant Ascensia Diabetes Care Holdings AG, are herein referred to as "Defendant."

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

8.  This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

9.  Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

10. Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the infringing methods and systems to introduce and sell its products into

the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

11. On information and belief, Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for team leaders of sales, sales operation managers and system network architects, in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.



*Figure 1* – Excerpt Apple App Store from website as last visited on April 19, 2024, at https://apps.apple.com/us/app/eversense/id1019665667.

For people with diabetes, the Eversense Mobile Application works with all Eversense Continuous Glucose Monitoring Systems available in the US – the first and only long-term CGM with a sensor that measures glucose for months, not weeks. The app runs on a compatible mobile device and receives and displays glucose data from the Eversense Smart Transmitter.

In addition to the current glucose value, the Eversense Mobile App provides alerts for hypo and hyperglycemia based on the settings you enter. It also displays the rate and direction of glucose changes, and provides the ability to enter glucose-related events like meals, insulin and exercise. The Eversense CGM Mobile App is also compatible with the Eversense NOW Remote Monitoring mobile app and the Apple Health app.

The Eversense Mobile Application cannot provide glucose readings if not used in conjunction with the Eversense CGM system, including the Eversense Smart Transmitter and Eversense Sensor. The Eversense CGM System is a prescription device, and you should contact your health care provider for more information.

**ORIGINAL COMPLAINT**



***Figure 2*** – Excerpt from Google Play website as last visited on April 19, 2024 at https://play.google.com/store/apps/details?id=com.senseonics.gen12androidapp&hl=en_US&gl=US.

12. Upon information and belief, Defendant has authorized sales/customer service agents servicing individuals with diabetes and hospitals in Eastern District of Texas, such as, Lindsey Van Dyke, Advanced Institute for Diabetes and Endocrinology, 1900 Matlock Road, Suite 304, Mansfield, TX, 76063; Joseph Toscani and Daniel Katselnik, diabetes and metabolism specialists located at 4118 Pond Hill Rd, Suite 300, Shavano Park, Texas 78231. *See*

**ORIGINAL COMPLAINT**

*https://www.ascensiadiabetes.com/eversense/support/find-a-provider/*,   as   last visited on April 19, 2024.

13. Defendant has a regular and established place of business in this District through the Providers acting as agents. Defendant manifests assent to the Providers that they shall act on Defendant's behalf and subject to its control, and the Providers manifest assent or otherwise consent to act. Defendant maintains "interim control" over the Eversense Territory Managers, in which they rely on interactions and Defendant's instructions within the scope of their work.

## Experience



**Eversense Territory Manager**
Ascensia Diabetes Care
Jan 2024 - Present · 4 mos
Austin, Texas, United States

*Figure 3 –* Screenshot of Linked-In profile for employee of Ascensia Diabetes Care working in Texas.

14.  Defendant actively solicits healthcare professionals to become "Providers" in this District. *See* Defendant's website as last visited on April 19, 2024, at *https://www.ascensiadiabetes.com/eversense/become-a-provider/*.

15. Upon information and belief, the contracts between Defendant and the Providers to establish (1) Defendant has the right to direct and control the Providers, (2) Defendant has manifested consent that Providers act on its behalf, and (3) the Providers have consented to act on behalf of Defendant. The Providers sell, monitor, train, oversee use, and handle complaints and returns, instruments and implants obtained from and on behalf of Defendant for customers in this District. Those activities involve storage, transport, training, monitor and exchange of goods and services and are part of Defendant's business.

16. Upon information and belief, Defendant has established and ratified the Customer Agents' places of business because the contracts affect how they perform

**ORIGINAL COMPLAINT**

hospital set ups, approval of procedures to be performed at hospitals with Defendant products, sales, training, handling complaints, returns. Defendant also provides the Providers with all information required to properly get products approved at hospitals.

17. The Providers servicing this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them-authorized distributors in the United States.

18. Defendant ratifies the Providers' locations because it exercises interim control over the Providers' activities and holds out to the public that Defendant's distribution, warehousing, marketing and sales of the products are being performed at and by Providers' locations in this District.

19. Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Providers' locations by the regular, physical presence of its employees.

20. As shown below, Defendant has employees in the Eastern District of Texas, such as Mitchell Miller, an "Algorithm Development Engineer at Senseonics" that lives in Plano, Texas. *See https://www.linkedin.com/in/mitchellmiller1/* as last visited on April 19, 2024.

21. As shown above, employees are located in this District.  Locations within the Eastern District of Texas are important to the business performed and defendant has the intention to maintain some place of business in the Eastern District of Texas.

22. On information and belief, Defendant's employees also do not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's CGM services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places

**ORIGINAL COMPLAINT**

of businesses, they then visit local customers to deliver or show the samples.

23. On information and belief, Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

24. Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

25. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022); *IOT Innovations LLC v. Monitronics Int'l, Inc., d/b/a/ Brinks Home*, No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5 (E.D. Tex. Sept. 11, 2023), report and recommendation adopted sub nom. *Iot Innovations LLC v. Monitronics Int'l, Inc*., No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

26. Furthermore, venue is proper in this Judicial District pursuant to 28 U.S.C. 1391(b), 1391(c) and 1400(b) because, among other things, Defendant is subject to personal jurisdiction in this Judicial District, regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and they are not residents in the United States and may be sued in any judicial district.

## PATENTS-IN-SUIT

**ORIGINAL COMPLAINT**

27. "Patents are presumed valid, and each patent claim is 'presumed valid independently of the validity of other claims.'" *Kowa Co., Ltd. v. Amneal Pharms.*, LLC, No. 14-CV-2758 (PAC), 2017 WL 10667089, at *6 (S.D.N.Y. Sept. 19, 2017) (*citing* 35 U.S.C. § 282) *aff'd*, 745 F. Appx 168 (Fed. Cir. 2018).

28. "Patent examiners are owed deference and are 'presumed to have considered' prior art references listed on the face of a patent." *Id.* (*citing Shire, LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)). Defendants "have the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Id.* (*quoting PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

29. By operation of law, the Patents-in-Suit issued and exclusively vested to Cellspin Soft, Inc. as of the issue date of the Patents-in-Suit.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti*, 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.*, 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).

30. A variety of well-known companies and a multitude of USPTO examiners have cited the Patents-in-Suit in the prosecution of these companies' patent applications including, such as Samsung, Nokia, Citrix, Qualcomm, Amazon Technologies, Microsoft, and Google. This shows the importance of the technology to leading technology providers.

31. The USPTO Examiners did thorough search for prior art looking into at least these twelve (12) recorded classifications:

     a.  "H04N1/00307 Connection or combination of a still picture apparatus with another apparatus, *e.g.* for storage, processing or transmission of still picture signals or of information associated with a still picture with

**ORIGINAL COMPLAINT**

a telecommunication apparatus, *e.g.* a switched network of teleprinters for the distribution of text-based information, a selective call terminal with a mobile telephone apparatus;"

b. "G06F3/005 Input arrangements through a video camera;"

c. "H04L67/04 Protocols specially adapted for terminals or networks with limited capabilities; specially adapted for terminal portability;"

d. "H04N1/00103 Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites;"

e. "H04N1/00103 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites;"

f. "H04N1/00 - Scanning, transmission or reproduction of documents or the like, e.g. facsimile transmission; Details thereof;"

g. "H04N1/00095 - Systems or arrangements for the transmission of the picture signal;"

h. "H04N1/00106 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites using land mobile radio networks, e.g. mobile telephone;"

i. "H04N1/00108 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites of digital signals;"

j. "H04N1/00127 Connection or combination of a still picture apparatus with another apparatus, e.g. for storage, processing or transmission of still picture signals or of information associated with a still picture;"

k. "H04N1/00204 Connection or combination of a still picture apparatus with another apparatus, *e.g.* for storage, processing or transmission of still picture signals or of information associated with a still picture with

**ORIGINAL COMPLAINT**

a digital computer or a digital computer system, *e.g.* an internet server;"

l.  "H04N21/4223 Cameras;"

m. "H04N21/6131 Network physical structure; Signal processing specially adapted to the downstream path of the transmission network involving transmission via a mobile phone network;"

n.  "H04W4/02 Services making use of location information;"

o.  "H04W4/023 Services making use of location information using mutual or relative location information between multiple location based services [LBS] targets or of distance thresholds;"

p.  "H04W4/21 Services signaling; Auxiliary data signaling, *i.e.* transmitting data via a non-traffic channel for social networking applications;"

q.  "H04W4/80 Services using short range communication*, e.g.* near-field communication [NFC], radio-frequency identification [RFID] or low energy communication;" and

r.  "H04N2201/0084 Digital still cameras."

## ACCUSED INSTRUMENTALITIES

32. Defendant infringes, and/or induces others to infringe, the asserted patent claims via the use of its continuous glucose monitoring system marketed as its Eversense CGM System, including Eversense E3 and similar versions of this Accused Instrumentality. *See e.g.* Exhibits 1, 2, 3.



*Figure 4* – Excerpt from Defendant's website of the Accused Instrumentality as last visited on April 19, 2024, at https://www.ascensiadiabetes.com/eversense/.

33. Defendant makes, uses, sells, and/or offers to sell a short-range (Bluetooth) wireless enabled data capture devices. Defendant infringes literally, or in the alternative, under the doctrine of equivalents. For example, Defendant infringes, and/or induces others to infringe, the asserted patent claims with its "Accused Instrumentalities" that include its Eversense App on smartphones. *See e.g.* Exhibits 1, 2, 3.

---

**ORIGINAL COMPLAINT**



*Figure 5* – Google Play download website page for Eversense CGM as last visited on April 19, 2024, https://play.google.com/store/apps/details?id=com.senseonics.gen12androidapp&hl=en_US&gl=US

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,900,766

34. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

35. United States Patent No. 9,900,766 (the "'766 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

36. Defendant makes, uses, offers for sale, and/or sells, and/or induces others to use, the claimed methods of the '766 Patent.

**ORIGINAL COMPLAINT**

37. Defendant has infringed, and is now infringing, the '766 Patent, including at least **Claim 1**, in this judicial district, and elsewhere, in violation of 35 U.S.C. § 271.

38. Claim 1 of the '766 Patent recites as follows:

> 1. A short-range wireless enabled data capture device, comprising:
>
> a memory device;
>
> a processor coupled to said memory device;
>
> a short-range wireless communication device configured to establish a short-range paired wireless connection between the short-range wireless enabled data capture device and a short-range wireless enabled cellular phone,
>
> wherein establishing the short-range paired wireless connection comprises cryptographically authenticating identity of the short-range wireless enabled cellular phone, and
>
> wherein establishing the short-range paired wireless connection further comprises the short-range wireless enabled data capture device using an association protocol; a data capture circuitry;
>
> said processor configured to acquire new-data in the short-range wireless enabled data capture device using the data capture circuitry, wherein the new-data is data acquired after establishing the short-range paired wireless connection between the short-range wireless enabled data capture device and the short-range wireless enabled cellular phone;
>
> said processor further configured to store the new-data in the memory device;
>
> said processor further configured to create a new-data object, wherein the new-data object comprises:
>
> a signal to notify,
>
> wherein the signal to notify corresponds to the acquiring of the new-data for transfer to the cryptographically

**ORIGINAL COMPLAINT**

authenticated short-range wireless enabled cellular phone; the acquired new-data; and associated new-data, wherein the associated new-data corresponds to data associated with the new-data; and

said processor further configured to transfer automatically the new-data object to the cryptographically authenticated short-range wireless enabled cellular phone, over the established short-range paired wireless connection,

wherein the cryptographically authenticated short-range wireless enabled cellular phone is configured to listen to the signal to notify and receive the new-data object over the established short-range paired wireless connection,

wherein a mobile client application for the cryptographically authenticated short-range wireless enabled cellular phone is configured to process the signal to notify and store the received new-data in a memory device of the cryptographically authenticated short-range wireless enabled cellular phone,

wherein the mobile client application for the cryptographically authenticated short-range wireless enabled cellular phone is configured to use HTTP to upload the received new-data along with user information to a user data publishing website over a cellular data network, and

wherein the user information corresponds to a user identifier that uniquely identifies a particular user of the user data publishing website and is used by the user data publishing website to publish the new-data for private consumption.

U.S. Patent No. 9,900,766, Claim 1.

39. Defendant directly infringes as it has practiced the accused methods of the '766 patent at least through Defendant's efforts to test, demonstrate, and otherwise use the Accused Instrumentalities.

**ORIGINAL COMPLAINT**



***Figure 6*** – Defendant website explaining how to pair and unpair to Apple Smartphones. *See* Exhibit 1.

40. Additionally, or in the alternative, Defendant has infringed, and now infringing, the '766 Patent in this judicial district, including by jointly with its end users and/or customers, by and through the use of the Accused Instrumentalities. Defendant's infringement comprises joint performance of the claimed methods by Defendant and/or its member. Further, Defendant conditions receipt of the benefits of the use of the patented technology.

41. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,904,030

42. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

**ORIGINAL COMPLAINT**

43. United States Patent No. 8,904,030 (the "'030 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

44. Defendant makes, uses, offers for sale, and/or sells, and/or induces others to use, the claimed methods of the '030 Patent.

45. Defendant has infringed, and is now infringing, the '030 Patent, including at least claim 12, in this judicial district, and elsewhere, in violation of 35 U.S.C. § 271.

46. Claim 12 of the '030 Patent recites as follows:

> 12. A method for transferring data to a remote internet server by a Bluetooth enabled mobile device comprising: providing a software module on the Bluetooth enabled mobile device, wherein the software module on the Bluetooth enabled mobile device is configured to perform steps comprising:
>
> establishing a paired secure connection between the Bluetooth enabled mobile device and a Bluetooth enabled data capture device, wherein paired secure Bluetooth connection uses cryptographic encryption key;
>
> receiving a message from the Bluetooth enabled data capture device,
>
> corresponding to supported data capability of the Bluetooth enabled data capture device;
>
> detecting new data acquired by the Bluetooth enabled data capture device for
> transfer, wherein detecting the new data for transfer comprises:
>
> sending a message to the Bluetooth enabled data capture device, over the
> established paired secure Bluetooth connection, to enable event notifications on the Bluetooth enabled data capture device corresponding to new data,
>
> wherein the new data is data acquired by Bluetooth enabled data capture device after establishing the secure Bluetooth pairing connection between the Bluetooth enabled data capture device and the Bluetooth enabled

**ORIGINAL COMPLAINT**

mobile device;

enabling event notification listening on Bluetooth enabled mobile device, to listen for event notifications sent from the Bluetooth enabled data capture device, over the established paired secure Bluetooth connection;

receiving, from the Bluetooth enabled data capture device, an event notification corresponding to existence of new data for transfer, over the established paired secure Bluetooth connection;

and sending a request to the Bluetooth enabled data capture device, to get new data for transfer;

receiving, by the Bluetooth enabled mobile device, encrypted data corresponding to the new data over the established Bluetooth paired secure wireless connection and obtaining new data from the received encrypted data using cryptographic encryption key; and

transferring the obtained new data along with a user identifier to a remote internet server, comprising configuring the obtained new data to comprise an action setting and destination web address of a remote internet server, wherein action setting comprises one of a remote procedure call (RPC) method and hypertext transfer protocol (HTTP) method, and wherein the user identifier uniquely identifies a particular user of the internet service provided by a remote internet server.

U.S. Patent No. 8,904,030, Claim 12.

47. Defendant directly infringes at least because it has practiced the patent claims of the '030 patent at least through Defendant's efforts to test, demonstrate, and otherwise use the Accused Instrumentalities.

**ORIGINAL COMPLAINT**



***Figure 7*** – Excerpt from Exhibit 2 to the Complaint.

48. Additionally, or in the alternative, Defendant has infringed, and now infringing, the '030 Patent in this judicial district, including by jointly with its end users and/or customers, by and through the use of the Accused Instrumentalities. Defendant's infringement comprises joint performance of the claimed methods by Defendant and/or its member. Further, Defendant conditions receipt of the benefits of the use of the patented technology.

49. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,234,121

50. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

51. United States Patent No. 11,234,121 (the "'121 Patent") was duly and legally

issued by the USPTO after a full and examination presumed to be thorough.

52. Defendant imports, makes, uses, offers for sale, and/or sells, and/or induces others to use, the claims of the '121 Patent.

53. Defendant has infringed, and is now infringing, the '121 Patent, including at least claim 7, in this judicial district, and elsewhere, in violation of 35 U.S.C. § 271. Claim 7 recites as follows:

> 7. A short-range wireless enabled cellular phone, comprising:
> a memory device;
>
> a processor coupled to the memory device;
>
> a cellular network communication device configured to connect to internet via a cellular data network;
>
> a short-range wireless communication device configured to establish a short-range paired wireless connection between the short-range wireless enabled cellular phone and a short-range wireless enabled data capture device, wherein the shortrange wireless enabled data capture device is configured to cryptographically authenticate identity of the short-range wireless enabled cellular phone;
>
> a single mobile client application for the short-range wireless enabled cellular phone comprising executable instructions that, when executed by the processor controls the processor to:
>
> listen for an event notification sent by the short-range wireless enabled data capture device, wherein the event notification corresponds to new-data and
>
> comprises sending a signal by the short-range wireless enabled data capture device to the short-range wireless enabled cellular phone,
>
> wherein the new-data is data acquired by the data capture device after establishing the short-range paired wireless connection with the short-range wireless enabled cellular phone;
>
> receive the event notification and the new-data from the short-range wireless enabled data capture device;

**ORIGINAL COMPLAINT**

process the event notification and store the received new-data in the memory device;

store a user authentication credential in the memory device;

use HTTP to send a user preference to a user data publishing web service over the cellular data network, wherein the user preference comprises global positioning system information;

further use the HTTP to upload the received new-data and the user authentication credential to the user data publishing web service over the cellular data, wherein the upload is based on a timer setting on the single mobile client application, and wherein the timer setting is no wait automatic or wait X minutes automatic; and

provide a touch based graphical user interface for the received new-data.

U.S. Patent No. 11,234,121, Claim 7.

54. Defendant has practiced the accused methods of the '121 patent at least through Defendant's efforts to test, demonstrate, and otherwise use the Accused Instrumentalities.

55. Additionally, or in the alternative, Defendant has infringed, and now infringing, the '121 Patent in this judicial district, including by jointly with its end users and/or customers, by and through the use of the Accused Instrumentalities. Defendant's infringement comprises joint performance of the claims by Defendant and/or its member. Further, Defendant conditions receipt of the benefits of the use of the patented technology.

56. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## **JURY DEMAND**

57. Plaintiff hereby requests a trial by jury including pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

**ORIGINAL COMPLAINT**

## **PRAYER FOR RELIEF**

58. By way of its infringing activities, Defendant has caused, and continues to cause, Plaintiff to suffer damages, and Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59. Defendant's infringement of Plaintiff's rights under the patents-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.


Dated:  April 19, 2024                    Respectfully Submitted,

*/s/ Randall Garteiser*
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 284-5200

**ATTORNEYS FOR PLAINTIFF**

**ORIGINAL COMPLAINT**